**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA**
**(JACKSONVILLE DIVISION)**

| | |
|---|---|
| WINDOW GENIE SPV LLC d/b/a WINDOW GENIE as successor-in-interest to FOR FRANCHISING, LLC,<br><br>       Plaintiff,<br><br>  v.<br><br>MD-1, LLC and DRAGAN MALESEVIC,<br><br>       Defendants. | CIVIL ACTION NO. |

---

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

---

Plaintiff Window Genie SPV LLC d/b/a Window Genie as successor-in-interest to FOR Franchising, LLC ("Window Genie"), by and through its undersigned counsel, for its Complaint against Defendants MD-1, LLC and Dragan Malesevic, for temporary and permanent injunctive relief, and for damages, and allege as follows:

### INTRODUCTION

1.  Window Genie seeks to enforce the covenant against competition and other post-term obligations accepted by Defendants which are contained in the valid and enforceable Franchise Agreement and Guaranty, which they are currently violating by, among other things: (1) operating a competing residential and commercial window cleaning, pressure washing, and gutter cleaning business – Window Works – within the scope of the non-compete provisions; (2) utilizing their former Window Genie telephone number; and (3) otherwise failing to comply with any of the other post-termination provisions contained within Sections 19 and 24 of the Franchise Agreement.  To this end, Window Genie seeks, *inter alia*, the issuance of injunctive

relief in order to enforce those provisions and enjoin other improper conduct in violation of the agreements between the parties.

## PARTIES

2.      Window Genie SPV LLC is a Delaware limited liability company, having its principal place of business at 1010 N. University Parks Dr., Waco, Texas 76707.

3.      Window Genie SPV LLC's sole member and owner is Neighborly Assetco LLC, a Delaware limited liability company with its principal place of business in Texas.

4.      Neighborly Assetco LLC's sole member and owner is Neighborly Issuer LLC, a Delaware limited liability company with its principal place of business in Texas.

5.      Neighborly Issuer LLC's sole member and owner is Neighborly SPV Guarantor LLC, a Delaware limited liability company with its principal place of business in Texas.

6.      Neighborly SPV Guarantor LLC's sole member and owner is Dwyer Franchising LLC d/b/a Neighborly, a Delaware limited liability company with its principal place of business in Texas.

7.      Dwyer Franchising LLC's sole member and owner is The Dwyer Group LLC, a Delaware limited liability company with its principal place of business in Texas.

8.      The Dwyer Group LLC's sole member and owner is The Dwyer Group, Inc., a Delaware corporation with its principal place of business in Texas.

9.      Therefore, no member of Window Genie SPV LLC is a citizen of Florida.

10.     Defendant MD-1, LLC ("MD-1") is a Florida limited liability company, having its principal place of business at 14286-19 Beach Blvd. #236, Jacksonville, Florida 32250.

11.     Defendant Dragan Malesevic is a resident and citizen of the State of Florida with his residence located at 7850 Chase Meadows Drive West, Jacksonville, Florida 32256.

12.     Defendant Dragan Malesevic is the managing member of MD-1, guaranteed all of MD-1's contractual obligations addressed herein, and is the moving, active, and conscious force behind its misconduct alleged herein.

## JURISIDCTION AND VENUE

13.     This Court has personal jurisdiction over Dragan Malesevic because he is a resident and citizen of Florida.

14.     This Court has personal jurisdiction over MD-1, LLC because its principal place of business is located in Florida and it operates, conducts, engages in and carries on a business in Florida.

15.     This Court has original (federal question) subject matter jurisdiction over this dispute pursuant to the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836, *et seq.*, as well as supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims under the DTSA.

16.     This Court also has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because there is complete diversity and the amount-in-controversy exceeds $75,000.

17.     The value of the injunctive relief sought by Window Genie exceeds $75,000.

18.     The amount of damages incurred by Window Genie based upon the violation of Defendants' post-term restrictive covenants including the covenant not to compete and covenant not to solicit along with the attorneys' fees recoverable under the Franchise Agreement, Guaranty, and/or Fla. Stat. Ann. § 542.335 exceeds $75,000.

19.     This action is properly venued in the United States District Court for the Middle District of Florida, pursuant to 28 U.S.C. §§ 1391(b)(1) and (2), because Defendants are Florida

citizens and a substantial part of the events or omissions giving rise to the claims occurred within the Jacksonville Division of this District.

## OPERATIVE FACTS

**A.**     **The Business of Window Genie**

20.     Window Genie is an industry leader in the professional home services sector.

21.     Window Genie is a national franchise that has been operating since 1994 and specializes in, among other things, residential and commercial window cleaning, window tinting, pressure washing, and gutter cleaning.

22.     It sells franchise businesses to franchisees such as MD-1 and, in connection with the franchise businesses, it has developed proprietary business methods, techniques, and data used in connection with the franchise.  It has grown substantially since 1994 and now has over 100 locally owned and operated franchise businesses across the United States.

23.     Through its franchise system, Window Genie markets, promotes, and provides services to its franchisees throughout the United States through franchise agreements.

24.     Over the years, the Window Genie brand has developed valuable goodwill, including a strong and well-known reputation for quality, value and reliability, brand recognition and a loyal customer base throughout the United States.

25.     Window Genie has invested substantial effort and the expenditure of a substantial amount of money to develop valuable goodwill.

26.     The value of the goodwill developed in Window Genie is not of precise monetary calculation, but because Window Genie is one of the most successful window cleaning and related professional services franchise systems in the United States and is widely known as a provider of window cleaning and related professional services, the value of Window Genie's

goodwill is substantial.

27.     Franchisees benefit not only from Window Genie's brand recognition, trademarks, and goodwill, but from a well-established and proven business model.

28.     As a result, Window Genie franchisees are spared the inherent risks and costs of a typical start-up business, and are provided with immediate name recognition.

29.     Window Genie has developed and acquired a comprehensive business method of operating a window cleaning and related services business.

30.     Window Genie's method consists, in part, of confidential and proprietary business systems, techniques, products, and formats, developed through considerable expenditures of effort and money, and is identified by and with certain proprietary names and marks owned by Window Genie (the "System").

31.     Window Genie has developed, through considerable expenditures of effort and money, proprietary strategies for marketing and promoting a window cleaning and related services business (the "Marketing Strategy").

32.     Window Genie provides its unique and proprietary services to the public through authorized franchisees, who enter into franchise agreements with Window Genie.

33.     A crucial aspect of Window Genie's past and ongoing success has been its reputation as a trusted provider of window cleaning and related services among its customers.

34.     The Window Genie franchise system is driven by its strong reputation for offering a high level of customer service, including thorough window cleaning and related services using its proprietary System, products and other proprietary materials.

35.     Window Genie's system sets it apart in an industry that can be plagued by inconsistent, unreliable, and at times untrustworthy service.  Window Genie's reputation for

offering responsive, reliable, and high-quality window cleaning and related services to residential homeowners and commercial customers has allowed it to stand above its competitors and obtain extraordinary success.

**B.    The Window Genie Marks**

36.    Window Genie is one of the most successful window cleaning and related services franchise systems in the United States, and is widely known as a provider of window cleaning services.

37.    Window Genie is the owner of various trademarks, service marks, designs, and logos for use in the promotion of Window Genie services, products, programs, and marketing, which are on the principal register of the United States Patent and Trademark Office (the "Marks" or "Window Genie Marks").

38.    Through its franchise system, Window Genie markets, promotes, and provides services to its window cleaning franchisees throughout the United States through franchise agreements.  Window Genie grants licenses to franchisees to use the Marks and participate in its confidential and proprietary business system pursuant to written franchise agreements, which are reasonably and carefully tailored to protect Window Genie's valuable trade secrets/confidential proprietary materials, reputation, goodwill, products, and other legitimate business interests.

39.    Window Genie has invested substantial effort over a long period of time, including the expenditure of a substantial amount of money, to develop goodwill in its trade names and service marks to cause consumers throughout the United States to recognize the Marks as distinctly designating Window Genie window cleaning and related services.

40.    The value of the goodwill developed in the Marks is not capable of precise monetary calculation, but because Window Genie is one of the most successful window cleaning

franchise systems in the United States and is widely known as a provider of window cleaning services, the value of Window Genie's goodwill is substantial.

**C.    Agreement Between Window Genie and MD-1, LLC**

41.    On or about August 23, 2013, MD-1 entered into a Franchise Agreement to operate a new Window Genie window cleaning franchise in the exclusive marketing territory in or around Jacksonville, Florida.  MD-1's exclusive marketing territory was designated by the following zip/postal codes: 32004, 32081, 32082, 32095, 32224, 32240, and 32250.  This agreement was for a ten-year term.  (A true and accurate copy of the Franchise Agreement is attached hereto as **Exhibit 1**.)

42.    Pursuant to the terms of the Franchise Agreement, Defendants were obligated to operate a Window Genie window cleaning and related services business.

43.    During the term of this agreement, Defendants were permitted to utilize the Window Genie brand, along with its trademarks, service marks, and System in association with the operation of their window cleaning and related services business.

44.    In turn, Defendants were required to fully and timely comply with all provisions in the agreement including certain payment obligations as well as to abide by the post-term obligations, and agreement not to compete with Window Genie after expiration of the agreement.

45.    The Defendants further acknowledged that during the term of the Franchise Agreement, Window Genie would disclose trade secrets and other confidential information to the Defendants during the training program, through the Operations Manual, and as a result of guidance furnished to Defendants during the term of the agreement.  *See* Ex. 1 at Section 19.

46.    The Defendants further acknowledged that the trade secrets and other confidential information were proprietary and were disclosed to the Defendants solely on the condition that

the Defendants not utilize the trade secrets or other confidential information in any other business or capacity and that they must maintain the absolute confidentiality of the trade secrets and other confidential information.  *Id.*

**D.**     **Post-Expiration Obligations Under the Franchise Agreement**

47.     The Franchise Agreement contains numerous post-expiration obligations agreed to by each franchisee.

48.     Upon expiration of the Franchise Agreement, Defendants were required to "discontinue all use of the Window Genie Marks and the Window Genie System, and the use of any and all signs and goods bearing such Window Genie Marks, or any reference whatever thereto[.]"  *See id.* at Section 24.B.2c.

49.     Upon expiration of the Franchise Agreement, Defendants were required to return to Window Genie "all material furnished by [Window Genie] containing trade secrets, operating instructions or business practices, methods or procedures, including, without limitation the Manual without retaining copies thereof."  *Id.*

50.     Upon expiration of the Franchise Agreement, Defendants were required to return to Window Genie "copies of customer lists, including information regarding customer telephone numbers, addresses and services provided[.]"  *Id.*

51.     Upon expiration of the Franchise Agreement, Defendants were required to "assign to [Window Genie] the business telephone and fax numbers used in the Franchised Business."  *Id.*

52.     Upon expiration of the Franchise Agreement, Defendants were required to "not thereafter (i) operate or do business under any name or in any manner that might tend to give the general public the impression that this Agreement is still in force or that Franchisee is connected

in any way with Franchisor, or has any right to use the Window Genie System or the Window Genie Marks[.]"  *Id.*

**E.      Post-Term Non-Compete and Non-Solicitation under Franchise Agreement**

53.     The Franchise Agreement also contains post-term obligations not to compete and not to solicit.

54.     Section 19.B. of the Franchise Agreement sets forth some of Defendants' post-term obligations including, without limitation, the obligation not to compete or solicit. Specifically, the agreement mandates that franchisees and persons controlling, controlled by or under common control with the franchisee and each of their shareholders, members, partners, officers, or any person who has a direct or indirect beneficial interest in the franchised business shall not, directly or indirectly:

> (ii)   For a period of twenty-four (24) months after … expiration … of this Agreement, engage in, acquire any financial or beneficial interest (including interest in corporations, partnerships, trusts, unincorporated associations or joint ventures) in, become a landlord for, perform any activities for, provide any assistance to, or receive any financial or other benefit from, any business or venture that sells services and/or products that are the same or substantially similar to the Franchised Business within a ten (10) mile radius of the Franchised Business[.]

> (iii)   …for a period of twenty-four (24) months after … expiration … of this Agreement, solicit, contact, call upon, communicate with or attempt to communicate with any customer for the purpose of providing or obtaining any business or services that are the same as or similar in nature to the business of the Franchised Business and/or the Window Genie System and/or persuade any customer to cease to do business or to reduce the amount of business which any such customer has customarily done or is reasonable expected to do with Franchisor or any of our franchisees.

> (iv)   …for a period of six (6) months after … expiration … of this Agreement, employ or seek to employ any person who is at the time was employed by Franchisor, any of our affiliates or by any person who is at the time operating a Window Genie franchise or otherwise induce, directly or indirectly, such person to leave such employment.

*See* **Exhibit 1**, Franchise Agreement at Sec. 19.B.

55.     These restrictions are put in place to protect the legitimate business interests of

the franchise system.  To this end, the franchisee:

> [A]cknowledges that as a franchisee, you will receive specialized training, including operations training in our Window Genie System and receive access to proprietary and Confidential Information.  As a condition of granting you a license to operate the Franchised Business and to train Franchisee in our Window Genie System, we require the [above-referenced] covenants in order to protect our legitimate business interests and interests of other franchisees in our Window Genie System.  *Id.* at Section 19.B.

56.     In accordance with Section 25.C(4), the parties irrevocably waive trial by jury in

any action, proceeding or counterclaim, between the parties.  *See id.* at Section 25.C(4).

57.     Pursuant to the terms of the Franchise Agreement, Window Genie is entitled to

the recovery of all attorneys' fees and costs.

**F.     The Guaranty**

58.     In connection with the Franchise Agreement, Window Genie required the

principal owners of MD-1, as a condition of execution of the Franchise Agreement, to sign an

acceptable personal guaranty to secure the performance of all obligations on the part of MD-1

under the Franchise Agreement.  *See id.* at Section 11.

59.     The parties entered into the Personal Guaranty on August 23, 2013,

contemporaneously with execution of the Franchise Agreement.  (A true and accurate copy of

the Personal Guaranty is attached hereto as **Exhibit 2**.)

60.     Pursuant to the Personal Guaranty, Defendant Dragan Malesevic agreed to the

timely performance of all obligations of MD-1 under the Franchise Agreement.  *Id.*

**G.     Defendant's Operation and Expiration of the Franchise Agreement**

61.     Defendants operated their Window Genie franchise from 2013 through August

23, 2023.

62.     Defendants benefited from the System and training provided and used its resources to develop a successful Window Genie franchised business.

63.     Defendants enjoyed the benefits of running a Window Genie franchise, including using Window Genie's trademarks, goodwill, reputation, and system, to generate a customer base, which led to Defendants realizing substantive revenue.

64.     In 2023, Defendant Dragan Malesevic indicated to Window Genie that he was not interested in renewing the Franchise Agreement for another ten-year term because of ongoing health issues.

65.     As a result, on August 4, 2023, Window Genie issued Defendants a letter confirming the expiration and non-renewal of the Franchise Agreement.  (A true and accurate copy of Correspondence dated August 4, 2023 is attached hereto as **Exhibit 3**.)

66.     This letter explained, among other things, that the Franchise Agreement would expire on August 23, 2023 and identified the numerous post-expiration requirements set forth in the Franchise Agreement.

67.     On August 23, 2023, the Franchise Agreement expired.

**H.     Defendants' Competing Window Cleaning and Related Services Business**

68.     Upon information and belief, prior to expiration of the Franchise Agreement, Defendants began planning to operate a directly competing window cleaning and related services business – Window Works – utilizing their same Window Genie phone number – (904) 755-1554.

69.     Notably, the domain (windowworksfl.com) that Defendants are utilizing for their competing business is privately registered; however, it was created on May 9, 2023 – over three months prior to expiration of the Franchise Agreement.  (A true and accurate copy of the

WHOIS search results are attached hereto as **Exhibit 4**.)

70.     Even worse, in their advertisements, they brazenly tout that: **"Window Genie is: Window Works – SAME PEOPLE, SAME SERVICE, SAME NUMBER"** and improperly (and intentionally) utilize Window Genie's goodwill:



71.     Additionally, in violation of their post-expiration covenants, Defendants are targeting their former Window Genie customers by thanking them for being loyal customers over the past ten (10) years and providing them with a coupon:



72.     Furthermore, Defendants are advertising the same exact services in blatant

disregard for their post-term franchise obligations:



73.     As a result, immediately upon learning of the violation of the post-term restrictive

covenants, on September 12, 2023, Window Genie sent Defendants a cease and desist letter

regarding their new competing business – Window Works – demanding that they cease operating

this competing business immediately in violation of the restrictive covenants contained within

the Franchise Agreement.  This letter further demanded that Defendants immediately transfer

their Window Genie phone number as well.  (A true and accurate copy of Correspondence dated

September 12, 2023 is attached hereto as **Exhibit 5**.)

74.     The letter attached a printout from Window Works' own website –

https://www.windowworksfl.com.

75.     Indeed, Defendant Dragon Malesevic is clearly operating this directly competing window cleaning and related services business including, without limitation, window cleaning, window tinting, pressure washing, and gutter cleaning:



(https://www.windowworksfl.com/contact - last viewed on April 8, 2024).

76.     As can be seen from the above screenshot, Defendants are operating a directly competing company in the same territory – Jacksonville, Florida.

77.     While Defendants are now doing business as "Window Works"; it appears that they may be operating under the same franchisee entity, MD-1, LLC as Dragon Malesevic recently filed a 2024 Florida Limited Liability Annual Report on behalf of MD-1, LLC.  (A true and accurate copy of MD-1, LLC's 2024 Florida Limited Liability Annual Report filed on March 5, 2024 is attached hereto as **Exhibit 6**.)

78.     As of the date of this filing, Defendants blatantly failed to comply with the requests contained in the cease and desist letter and they are still operating the competing

business.

79.     Window Genie has never authorized Defendants to operate a competing business during the term of their non-compete obligations.

80.     Window Genie has never authorized Defendants to contact their former Window Genie customers during the term of the non-solicitation obligations.

81.     Window Genie would never do so as Defendants are operating a business which is directly competing with Window Genie, and is essentially offering the same window cleaning and related services, in the same territory that they had operated their Window Genie franchise.

82.     They are also utilizing the same phone number that they utilized when operating their Window Genie franchise and likely improperly utilizing Window Genie's confidential and proprietary information to service their former Window Genie customers.

**I.      Irreparable Harm to Window Genie**

83.     Defendants' unlawful competition has irreparably harmed, and will continue to irreparably harm Window Genie and its current and future franchisees, and can only be stopped through injunctive relief.

84.     As detailed above, Defendants are unlawfully competing by operating a window cleaning and related services business: (a) offering the same services as they offered when they were operating the franchised business; (b) utilizing the same telephone number as their former Window Genie franchise – (904) 755-1554; (c) utilizing Window Genie's trade secrets – including its client list and information along with other confidential information; (d) targeting the formerly approved exclusive marketing territory; and (e) creating consumer confusion by advertising that "Window Works is Window Genie" and has the same number, same people, and same services.

85.     Rather than adhere to their post-expiration obligations, the Defendants have simply changed the name under which they operate and have continued operating the same window cleaning and related services business without interruption in direct violation of the terms of the Franchise Agreement.

86.     Through their training and experience in operating a Window Genie franchise, Defendants are now competing with knowledge of Window Genie's marketing plans, the costs of operating a Window Genie franchise, and the business strategies employed by Window Genie franchisees.  Defendants know exactly how Window Genie's business system operates in terms of training, procedures, promotion, marketing, products, pricing, technology, and every other critical aspect of its business that gives Window Genie franchisees an edge in the marketplace.

87.     Defendants' unlawful competition has irreparably harmed, and continues to irreparably harm Window Genie through loss of customer goodwill and loyalty; loss of business opportunities and relationships to provide window cleaning and related services; loss of customers; loss of franchisee stability; loss of ability to sell other franchises; and loss of competitive advantage in the Defendants' former Window Genie territory.  This harm cannot be quantified or compensated for through money damages alone.

88.     When a Window Genie franchisee remains at the same address and/or in the same territory for a number of years, Window Genie develops goodwill and loyalty with customers in the area.  Prospective Window Genie franchisees will often seek franchise territories with franchisees who have maintained the same territory for a number of years in order to capitalize on this goodwill and loyalty.  For this reason, Window Genie franchisees specifically acknowledge in the Franchise Agreement that Window Genie requires the restrictive covenants in order to protect Window Genie's legitimate business interests and interests of other

franchisees.

89.     When a former Window Genie franchisee unlawfully operates a competing window cleaning and related services business in their former franchise territory following expiration or termination of their franchise agreement, it reduces the value of the franchise territory and makes it significantly more difficult for Window Genie to attract a replacement franchisee for the franchise territory.  Certainly, Window Genie cannot continue running a Window Genie business in the territory that has garnered customer goodwill for a decade if Defendants are operating Window Works there.  Even if Window Genie can find a replacement franchisee (it has yet to be able to do so), Window Genie has already lost its competitive advantage in the territory.

90.     Window Genie franchisees routinely communicate with each other and/or monitor the actions of other current and former Window Genie franchisees.  If Window Genie franchisees observe that other franchisees are able to simply "flip signs" and operate competing window cleaning and related services businesses within their franchise territories, it can create a "domino effect" and cause other franchisees to also "flip signs" and begin competing which will significantly reduce the value of a Window Genie franchise, and threaten the stability of Window Genie's entire franchise system.

91.     It is vitally important to Window Genie's franchise system (in the Jacksonville area and throughout the country), and Window Genie's franchisees (in the Jacksonville area and throughout the country), that the Court enforce the post-expiration restrictive covenants and obligations in the Franchise Agreement, which expressly prohibit Defendants from operating their competing window cleaning and related services business.

92.     Window Genie has no other means of enforcing the post-term restrictive covenants and obligations in the Franchise Agreement—and remedying the irreparable harm Window Genie has suffered, and continues to suffer—other than to seek injunctive relief from this Court.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract: Franchise Agreement)

93.     Window Genie incorporates herein by reference the preceding Paragraphs as if set forth herein verbatim.

94.     As set forth above, Window Genie and MD-1 entered into the Franchise Agreement whereby Window Genie agreed to provide MD-1 with the access and use of its trademarks, business systems, products, and proprietary/confidential materials and MD-1 agreed to specific post-expiration obligations and agreed not to compete with Window Genie or solicit Window Genie customers for a period of twenty-four (24) months.

95.     The Franchise Agreement is valid and enforceable.

96.     Window Genie performed all of its obligations, covenants, promises, and conditions required on its part to be performed in accordance with the terms and conditions of the Franchise Agreement.

97.     MD-1 has breached the Franchise Agreement by, *inter alia*:

   a. Operating a competing business in its former Jacksonville territory within 24 months after expiration of the Franchise Agreement;

   b. Diverting, attempting to divert, soliciting or attempting to solicit former Window Genie customers to the new competing business;

   c. Failing to return Window Genie's client list and customer information to Window Genie following expiration of the Franchise Agreement;

   d. Utilizing Window Genie's client list and customer information to improperly solicit Window Genie customers; and

     e.  Using Window Genie's trade secrets and/or other confidential and proprietary information for the benefit of the competing business.

98.    MD-1 also breached the Franchise Agreement by failing to effectuate the assignment of the telephone numbers that were previously utilized as an active Window Genie franchisee.

99.    The restrictive covenants contained in the Franchise Agreement are reasonably necessary to protect Window Genie's legitimate business interests.

100.    Those legitimate business interests include, without limitation:

     a.  Maintaining and protecting Window Genie's goodwill and customer loyalty in the territory governed by the Franchise Agreement;

     b.  Substantial relationships with existing and prospective customers;

     c.  Retaining customer relationships;

     d.  Window Genie's customer lists, customer information, and other valuable confidential information/trade secrets;

     e.  Preserving Window Genie's ability to facilitate the operation of Window Genie franchises where Window Genie franchise businesses are currently located; and

     f.  Protecting Window Genie from irreparable harm.

101.    As a result of MD-1's breaches of the Franchise Agreement, Window Genie has suffered and continues to suffer actual, substantial, and irreparable damage, including, but not limited to:

     a.  Loss of customer goodwill and loyalty;

     b.  Loss of business opportunities and relationships to provide window cleaning and related services;

     c.  Loss of customers;

     d.  Loss of profits;

> e.  Loss of franchisee stability;
>
> f.  Loss of ability to sell other franchises;
>
> g.  Loss of value in confidential business information; and
>
> h.  Loss of competitive advantage in the Jacksonville territory.

102.   Window Genie has been and will be irreparably harmed by MD-1's actions, and monetary damages are an insufficient remedy in that they can only potentially quantify a limited loss of customers, but cannot take into account the continuing irreparable damage to the value of MD-1's confidential information, goodwill, customer loyalty, and its ability to sell franchises, all of which are caused by MD-1's ongoing violations.  The damages caused by MD-1's actions constitute irreparable harm and an injury for which Window Genie has no adequate remedy at law.  Window Genie will continue to suffer irreparable harm unless injunctive relief is issued.

103.   Additionally, aside from the irreparable harm Window Genie suffered and continues to suffer, due to the operation of the competing business, Window Genie has also been damaged monetarily in an amount to be proven at trial.

104.   Pursuant to the Franchise Agreement, Window Genie is also entitled to the recovery of reasonable attorneys' fees and costs in this action.

**SECOND CLAIM FOR RELIEF**
**(Breach of Contract: Guaranty)**

105.   Window Genie incorporates herein by reference the preceding Paragraphs as if set forth herein verbatim.

106.   Pursuant to the terms of the Personal Guaranty, Defendant Malesevic agreed that, among other things, he would guarantee that MD-1 would perform each and every obligation set forth in the Franchise Agreement including, without limitation, the restrictive covenants.

107.     Despite his obligation to do so, Defendant Malesevic has failed to comply with this Guaranty as he failed to perform each and every obligation set forth in the Franchise Agreement and he is actively operating a competing window cleaning and related services business in clear violation of the non-compete provisions contained in the Franchise Agreement.

108.     Pursuant to the terms of the Guaranty, Defendant Malesevic is liable for all damages caused as a result of this and any other breach of the Franchise Agreement.

### THIRD CLAIM FOR RELIEF
### (Unjust Enrichment)

109.     Window Genie incorporates herein by reference the preceding Paragraphs as if set forth herein verbatim.

110.     Defendants have established a business directly competing against Window Genie utilizing and trading on the Window Genie name, marks, and brand.

111.     In doing so, Defendants have diverted business to their company to the exclusion of Window Genie.

112.     Defendants have profited from their misconduct and have been unjustly enriched at Window Genie's expense.

113.     It is against equity and good conscience to permit Defendants to retain the benefits derived from their wrongful conduct.

114.     As a direct and proximate result of Defendants' conduct, Window Genie has suffered and will continue to suffer, irreparable harm and damages.

### FOURTH CLAIM FOR RELIEF
### (Violation of Defend Trade Secrets Act of 2016)

115.     Window Genie incorporates herein by reference the preceding Paragraphs as if set forth herein verbatim.

116.   The Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, provides a private civil action for the misappropriation of a trade secret that is related to a product or service used in, or intended for use in, interstate or foreign commerce.

117.   Window Genie owns numerous trade secrets, including but not limited to, its Operations Manual, methods of operation, marketing strategies, customer lists, and customer information.

118.   Window Genie is a national franchisor with franchised businesses located all across the United States.  All of these franchisees utilize the same Operations Manual and other related trade secrets.

119.   Each of Window Genie's trade secrets derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

120.   Window Genie's trade secrets are not readily ascertainable by the public as they are disclosed only to franchisees in the operation of a franchise business pursuant to a franchise agreement.

121.   The Defendants were licensed to use Window Genie's trade secrets only pursuant to the terms of the Franchise Agreement in connection with the operation of their Window Genie franchise.

122.   The Defendants were never licensed or permitted to disclose Window Genie's trade secrets.

123.   Pursuant to the Franchise Agreement, Window Genie disclosed its trade secrets to the Defendants for the sole purpose of operating their Window Genie franchise business.

124.   Window Genie has taken extensive measures to preserve and protect these trade

secrets for the purpose of maintaining their competitive advantage in the marketplace.

125.     The Franchise Agreement explicitly provides for the protection of the above referenced trade secrets, including requiring the immediate return of materials containing trade secrets, operating instructions or business practices, methods or procedures, including, without limitation the Operations Manual and customer lists (including information regarding customer telephone numbers, addresses and services provided), upon expiration of the Franchise Agreement; requiring former franchisees and their representatives to maintain the confidentiality of the information; and requiring former franchisees and their representatives to never use the information for any purpose other than operating a franchised business pursuant to the Franchise Agreement.

126.     Pursuant to Section 24 of the Franchise Agreement, the Defendants agreed that upon expiration of the Franchise Agreement, they would not avail themselves or make use of any of the trade secrets or information received from Window Genie or disclose or reveal any such information or any portion thereof to anyone not employed by Window Genie or its licensees.

127.     Window Genie's trade secrets including the Operations Manual and client list relate to products and services purchased and sold in interstate commerce.

128.     Specifically, the client list is stored in an electronic database – BPro – and contains information related to customer names, contact information, including email addresses, potential customer contact information, information and data supporting each customer transaction, and notes on the customers including notes for follow-up.

129.     Window Genie (located in Ohio and then Texas) and Defendants (located in Florida) shared the Operations Manual and client list during the entire ten-year term of the Franchise Agreement.

130.     In accordance with its Operations Manual, Window Genie requires franchisees such as Defendants to utilize approved vendors in connection with the products and services offered and provided to its customers including customers contained within the customer list.

131.     These approved vendors include pressure washing chemicals vendors located in California, New Jersey and Texas and a window cleaning equipment and supplies vendor located in Colorado.

132.     Defendants (and all of Window Genie's other franchisees nationwide) utilized these vendors located in various states in connection with the services provided to their clients and services offered to their prospective clients – all clients identified on the client lists.

133.     Defendants (and all of Window Genie's other franchisees nationwide) sold, installed, offered to sell, and offered to install window film to clients and prospective clients identified on the client lists.  This window film was shipped from vendors located in Maryland, Ohio, Florida, Texas, Arizona and California.

134.     Upon information and belief, Defendants sold and/or offered to sell specialized private label Window Genie glass cleaner to clients and prospective clients identified on the client list.  This specialized private label Window Genie glass cleaner was shipped from Pennsylvania, Florida, Illinois and Nevada.

135.     Defendants (and all of Window Genie's other franchisees nationwide) utilized the specialized private label Window Genie glass cleaner shipped from Pennsylvania, Florida, Illinois and Nevada to provide certain window cleaning services to clients identified on the client lists.

136.     Defendants failed to return Window Genie's confidential information and trade secrets, including, without limitation, the Operations Manual and the client list.

137.    Defendants used and are using Window Genie's confidential information and trade secrets during and after the expiration of the Franchise Agreement in connection with window cleaning and related services done to divert revenues from Window Genie, and Window Genie has not and would not consent to or authorize such use.

138.    Defendants intentionally and without Window Genie's permission or authorization, misappropriated Window Genie's trade secrets for their own economic benefit and with the intention and knowledge that their conduct would injure Window Genie by, for example, causing Window Genie to lose any customers successfully solicited by Defendants.

139.    As a direct and proximate result of Defendants' willful, improper, and unlawful disclosure and Defendants' willful, improper, and unlawful use of Window Genie's trade secrets, Window Genie has suffered and will continue to suffer irreparable injury and damages.

140.    Pursuant to 18 U.S.C. § 1836(b)(3)(A), Defendants' actual and threatened use and misappropriation of Window Genie's trade secrets should be enjoined from further disclosure or use.

141.    Defendants' conduct in misappropriating Window Genie's trade secrets was, and continues to be, willful and malicious, warranting an award of exemplary damages in accordance with 18 U.S.C. § 1836(b)(3)(C) and reasonable attorneys' fees in accordance with 18 U.S.C. § 1836(b)(3)(D).

**FIFTH CLAIM FOR RELIEF**
**(Unfair Competition)**

142.    Window Genie incorporates herein by reference the preceding Paragraphs as if set forth herein verbatim.

143.    Defendants improperly used and will continue to use Window Genie's confidential/trade secret information in furtherance of their competing business.

144.     Through their actions, Defendants are intentionally attempting to deceive Window Genie's current and prospective customers for Defendants' business gain.

145.     As a direct and proximate result of Defendants' actions, Window Genie has suffered and will continue to suffer irreparable injury, and is entitled to monetary damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Window Genie respectfully prays for judgment against Defendants as follows:

1.     Enter judgment in Plaintiff's favor on all claims made herein;

2.     A preliminary and permanent injunction enjoining Defendants and their agents, servants, employees, and all others acting in active concert with them from:

   a.   All competitive actions or operations that violate the Franchise Agreement and/or Personal Guaranty; and

   b.   Using or disclosing Window Genie's confidential and/or proprietary information in any manner for any reason.

3.     For an Order directing Defendants to deliver to Window Genie any original and all copies, including electric copies and media, of lists and other sources of information containing the names, addresses, e-mail addresses, or phone numbers of customers of their former Window Genie franchise business;

4.     For an Order directing Defendants to comply with each and every post-term obligation set forth in the Franchise Agreement;

5.     For an Order assigning all telephone numbers utilized by Defendants while they operated the Window Genie franchise to Window Genie;

6.    For an Order to deliver to Window Genie all copies of the confidential Operations Manual and any updates thereto;

7.    For an accounting of Defendants' revenues and profits for all window cleaning and related services performed by their competing business;

8.    For a monetary award against Defendants in an amount to be proven at trial, including, but not limited to, compensatory damages, expectancy damages, punitive damages, exemplary damages, and disgorgement of profits;

9.    An award of interest, attorneys' fees, and costs; and

10.    Such other and further relief as the Court deems proper.

Dated:  April 11, 2024                    Respectfully submitted,

**/s/ Andrew R. Schindler**
Andrew R. Schindler
FBN 124845
aschindler@grsm.com
Gordon Rees Scully Mansukhani LLP
100 SE 2nd Street, Suite 3900
Miami, Florida 33131
T: (305) 428-5329

Of counsel:

**Daniel J. DiMuro**
*(Pro Hac Vice Forthcoming)*
**Ronald A. Giller**
*(Pro Hac Vice Forthcoming)*
Gordon Rees Scully Mansukhani LLP
18 Columbia Turnpike, Suite 220
Florham Park, New Jersey 07932
T: (973) 549-2500
ddimuro@grsm.com
rgiller@grsm.com

*Attorneys for Window Genie SPV LLC d/b/a Window Genie as successor-in-interest to FOR Franchising, LLC*